UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RYAN E. UHLMEYER, | Case No. 3:19-cv-00438-LRH-CLB |
| Plaintiff, | ORDER |
| v. | |
| USAA CASUALTY INSURANCE CO., a Texas Corporation; UNITED SERVICES AUTOMOBILE ASSOCIATION, an Unincorporated Association, | |
| Defendants. | |

Plaintiff Ryan Uhlmeyer has filed a motion to remand this case back to Nevada state court (ECF No. 13). Also pending before the Court is a motion to dismiss filed by defendant United Services Automobile Association ("USAA") (ECF No. 6), one of the two named defendants in this action. For the reasons stated below, the Court will give Uhlmeyer an opportunity to amend his complaint and withhold ruling on the motion to dismiss and motion to remand until his complaint is amended.

**I. Factual Background and Procedural History**

This is an insurance coverage dispute stemming from a traffic accident in which Uhlmeyer was struck by another motorist and subsequently hit by a semi-tractor. (ECF No. 1-1 at 4). The motorist's insurance company paid Uhlmeyer the full $100,000 limit of the motorist's auto insurance policy. (*Id*.) At the time of the accident, Uhlmeyer was a member of USAA, which allowed him to purchase an auto insurance policy from defendant USAA Casualty Insurance Co.

1

("USAA-CIC"). (*Id.*) At the time of the accident, Uhlmeyer had a valid insurance policy with USAA-CIC with uninsured/underinsured motorists coverage of $50,000 per person and $100,000 per accident. (*Id.*) Uhlmeyer's brother also had an insurance policy with USAA-CIC with uninsured/underinsured motorists coverage of $100,000 per person and $300,000 per accident. (*Id.* at 5). Following Uhlmeyer's auto accident, USAA-CIC tendered $100,000 in UIM coverage to Uhlmeyer pursuant to both his and his brother's policies, but Uhlmeyer contended that he was entitled to a combined $150,00 under the policies. (*Id.* at 5–7). In response, USAA-CIC stated that the anti-stacking language found in its insurance contracts prevented it from paying out the full $150,000 that Uhlmeyer requested. (*Id.* at 5–6).

Following a May 20, 2019 demand letter, Uhlmeyer filed this action in Nevada state court on June 2, 2019, alleging three causes of action against both defendants – breach of contract, breach of the duty of good faith and fair dealing, and violation of the Nevada Unfair Trade Practices Act. (ECF No. 1-1 at 2, 8–11). Defendants removed the lawsuit to this Court on July 31, 2019, and USAA filed a motion to dismiss on August 7, 2019. On August 28, Uhlmeyer filed a motion to remand (ECF No. 13); that motion and USAA's motion to dismiss are currently pending before the Court. USAA-CIC did not join in USAA's motion to dismiss.

## II. Legal Standard

### A. Motion to Remand

Under 28 U.S.C. §1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." A district court has original jurisdiction over civil actions where the suit is between citizens of different states and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00. 28 U.S.C. § 1332(a). Removal of a case to district court may be challenged by motion and a federal court must remand a matter if there is a lack of jurisdiction. 28 U.S.C. §1441. Removal statutes are construed restrictively and in favor of remanding a case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992).

**B. Motion to Dismiss**

USAA seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2)'s notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; a pleading, however, that offers " 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' " will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 667 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *Id*. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id*.

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Iqbal*, 556 U.S. at 667. Even so, "bare assertions. . .amount[ing] to nothing more than a formulaic recitation of the elements of a. . .claim. . .are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 556 U.S. at 681.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

3

**III. Discussion**

Ordinarily, the Court would address Uhlmeyer's motion to remand before addressing USAA's motion to dismiss because if the Court does not have diversity jurisdiction over his lawsuit, it cannot rule on the motion to dismiss. In briefing, USAA concedes that it is a citizen of Nevada (as is Uhlmeyer) because as an insurance exchange, it is a citizen of every state in which it has members. (ECF No. 15 at 3). But here, USAA has alleged that it was improperly joined to this action under the doctrine of fraudulent joinder, whereby a plaintiff includes a non-diverse defendant in a lawsuit for the sole purpose of avoiding removal to federal court. (*Id*.) USAA's main argument is because it never had any contractual relationship with Uhlmeyer, there was no basis for Uhlmeyer to name it as a defendant in a lawsuit premised primarily upon alleged breaches of contract. The same central issue – whether USAA had any contractual relationship with Uhlmeyer – underlines both motions. The Court begins its analysis here.

For a case to be brought into federal court based on the court's diversity jurisdiction, there must be complete diversity of citizenship – each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); 28 U.S.C. §1332(a). There is an exception to the citizenship requirement, and that is where a non-diverse defendant has been "fraudulently joined" to the action. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Joinder of a non-diverse defendant will be deemed fraudulent if "the plaintiff fails to state a cause of action against a resident defendant and the failure is obvious according to the settled rules of the state." *Id*. (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). A defendant is entitled to present facts showing that the joinder is fraudulent, and if it can, then the non-diverse defendant's presence in the lawsuit is ignored for purposes of determining diversity. *Id*. This means that the Court can look to facts beyond the complaint to determine if a defendant has been fraudulently joined. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998). *See also Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921).

The crux of USAA's argument is that it never had a contractual relationship with Uhlmeyer and thus cannot be liable for breach of contract or any derivative claims because Uhlmeyer only

had an insurance contract with USAA-CIC, not USAA. (ECF No. 15 at 4). In Uhlmeyer's complaint, he states that USAA-CIC issued him an auto insurance policy, but there is no allegation that he had a policy issued directly by USAA. (ECF No. 1-1 at 4). Instead, Uhlmeyer argues that because USAA and USAA-CIC were engaged in a joint venture to administer insurance policies, they are jointly and severally liable for breach of contract and any derivative claims. (ECF No. 16 at 4). Under Nevada law, "no one 'is liable upon a contract except those who are parties to it.'" *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 959 (Nev. 1998) (*quoting County of Clark v. Bonanza No. 1*, 615 P.2d 939, 943 (Nev. 1980)). But in *Albert H. Wohlers & Co.*, the Nevada Supreme Court recognized that a non-party can be held liable for breach of contract and related claims when that party is engaged in a joint venture with a party to the contract. There, the appellant developed promotional material, issued policies, billed and collected premiums, paid and adjudicated claims, and shared profits with an insurance company, and as such, it could be held liable for contractual claims made against the insurance company. *Id*. Here, the Court must determine whether Uhlmeyer has alleged sufficient facts that raise an inference that USAA and USAA-CIO were engaged in a joint venture to operate an auto insurance business. If he has not done so, then not only will the Court ignore USAA's presence for diversity jurisdiction purposes, but USAA must also be dismissed from this lawsuit.

Under Nevada law, a joint venture is a "contractual relationship in the nature of an informal partnership wherein two or more persons conduct some business enterprise, agreeing to share jointly, or in proportion to capital contributed, in profits and losses." *Hook v. Giuricich*, 823 P.2d 294, 296 (Nev. 1992). The laws regarding general partnerships also encompass joint ventures. *Radaker v. Scott*, 855 P.2d 1037, 1040 (Nev. 1993). A joint venture is a less formal relationship than a partnership, and they are typically associations entered into to perform a more limited business objection for a briefer period of time. *Hook*, 823 P.2d at 296. The intent to create a joint venture is determined by the application of ordinary rules concerning the interpretation and construction of contracts as well as a consideration of the actions and conduct of the parties. *Radaker*, 855 P.2d at 1040.

///

In his complaint, Uhlmeyer has alleged that USAA-CIC was part of a joint venture with USAA by way of "its administrative responsibilities, claims handling duties, profit sharing, and special relationship with USAA." (ECF No. 1-1 at 8). But aside from this one sentence, there are no other factual allegations within the complaint that give rise to an inference that the two companies were actually involved in a joint venture. These allegations are vague – there is no explanation of what the administrative responsibilities are, how the profit sharing operates, or what the special relationship entails. Missing from Uhlmeyer's complaint are any specific allegations, such as when the joint venture is alleged to have formed, what the scope of the venture is, or how long it is supposed to last (as joint ventures are for a limited duration). Uhlmeyer has not alleged any facts demonstrating that USAA and USAA-CIC intended to create a joint venture, which is a requirement for the Court to find that one exists. *Hollis v. Rock Creek Pack Station*, 594 F.Supp. 156, 160 (D. Nev. 1984)).

In his response to USAA's motion to dismiss, Uhlmeyer makes several new allegations regarding USAA and USAA-CIC's partnership – that USAA owns 100% of USAA-CIC's stock, USAA provides USAA-CIC office space, electronic data processing services, utilities, salaries, employee benefits, and mail processing, and USAA holds copyrights for the insurance policies USAA-CIC issues. (ECF No. 16 at 5). Uhlmeyer also alleges that USAA and USAA-CIC file joint income tax returns and that USAA manages USAA-CIC's bank accounts. (*Id*.) These allegations, which are not found in Uhlmeyer's complaint, begin to raise an inference that USAA and USAA-CIC are engaged in a joint venture. But a response to a motion to dismiss is not the appropriate place to raise new facts to defeat a motion to dismiss. *See Haskell v. Time, Inc.*, 857 F.Supp. 1392, 1396 (E.D. Cal. 1994) (a motion to dismiss is "addressed to the four corners of the complaint without consideration of other documents or facts outside the complaint"). As it stands now, Uhlmeyer's complaint does not allege sufficient facts that raise an inference that USAA and USAA-CIC were engaged in a joint venture to administer insurance policies. Instead, the presumption remains that relationship between USAA and USAA-CIC is exactly how they are organized – parent and subsidiary.

///

Nevada's Uniform Partnership Act states that "[a]ny association formed under any other statute of this State…is not a partnership under NRS 87.010 to 87.430." NEV. REV. STAT. §87.060(2). "Instead, an entity formed pursuant to other statutory framework is governed by the body of law pursuant to which the entity was formed." *Baroi v. Platinum Condominium Development, LLC*, 2012 WL 2847926, at *3 (D. Nev. July 11, 2012) (citing *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 702 (2d Cir. 1990)). This Court in *Baroi* went on to explain that the "unequivocal existence of a definite business form is the most reliable expression of the relationship among the parties." *Id*. In that case, the plaintiff was able to present evidence sufficient to meet its burden on summary judgment that the defendants were engaged in a joint venture. Here, Uhlmeyer acknowledges that USAA-CIC is a wholly owned subsidiary of USAA, but he does not allege any facts to defeat the relationship presumption in his complaint. (ECF No. 1-1 at 4). Rather than outright dismissing USAA from this lawsuit, the Court will withhold ruling on USAA's motion to dismiss and Uhlmeyer's related motion to remand because it lacks sufficient information to make an informed ruling. Uhlmeyer will have an opportunity to file an amended complaint and participate in discovery with USAA to determine whether there was a joint venture between it and USAA-CIC. USAA and Uhlmeyer may file supplements to their motions to dismiss and remand respectively once new information is revealed as to the relationship between USAA and USAA-CIC and Uhlmeyer amends his complaint accordingly.

What the Court can determine at this time is whether USAA-CIC has demonstrated that the amount in controversy exceeds $75,000. The amount in controversy is the "amount at stake in the underlying litigation." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (quoting *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005)). Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorney's fees awarded under fee-shifting statutes or contracts. *Fritsch v. Swift Transportation Company of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018). The removing defendant always bears the burden of establishing federal jurisdiction, including any applicable amount in controversy requirement. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Where the plaintiff's complaint does not specific the amount of

7

damages sought, the removing defendant must demonstrate by a preponderance of the evidence that the amount in controversy requirement has been met. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006).

Regarding damages, Uhlmeyer's complaint states that he seeks to recover the $50,000 that USAA-CIC did not pay him under both his and his brother's insurance policies. (ECF No. 1-1 at 8). Under his first cause of action for breach of contract, he asserts damages "in an amount in excess of this court's jurisdictional minimum," which in Nevada is $15,000. (*Id*. at 9). His second and third causes of action (breach of the covenant of good faith and fair dealing and a breach of Nevada's Unfair Trade Practices Act) request damages in the same amount. (*Id*. at 9–10). Uhlmeyer also requested attorney's fees and punitive damages. (*Id*. at 12). In Uhlmeyer's motion to remand, he states that these claims were pleaded in the alternative and accordingly cannot be aggregated together to reach the amount in controversy threshold. (ECF No. 13 at 7). He also claims that the Court "cannot consider punitive damages" unless USAA-CIC produces jury verdicts in cases involving similar facts. (*Id*.)

Uhlmeyer is correct in arguing that one of his three causes of action are pleaded in the alternative. His first claim for breach of contract is premised on the allegation that USAA-CIC violated the terms of his insurance contract by, principally, not providing him the benefits he claims he was entitled to. (ECF No. 1-1 at 8–9). Uhlmeyer's second claim for a violation of the duty of good faith and fair dealing, however, must be pleaded in the alternative to breach of contract. This is because a contractual breach of the covenant of good faith and fair dealing arises when one party to a contract complies with the terms of the contract but contravenes the intention and spirit of the contract. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 932 (Nev. 1991). "This cause of action stands in contrast to one for breach of contract because of its requirement for literal compliance with the terms of the contract." *Ruggieri v. Hartford Ins. Co. of the Midwest*, 2013 WL 2896967, at *3 (D. Nev. June 12, 2013) (citing *Kennedy v. Carriage Cemetery Services, Inc.*, 727 F.Supp.2d 925, 931 (Nev. 2010)). Allegations that a defendant insurance company violated the actual terms of a contract cannot be used to support a claim for a violation of the covenant of good faith and fair dealing. *Id*. Uhlmeyer is correct in arguing that he

8

may not recover on both causes of action. But it is somewhat unclear if his third cause of action, a violation of Nevada's Unfair Trade Practices Act, is pleaded in the alternative because Uhlmeyer merely recites language from the statute instead of listing the specific conduct in which USAA-CIC is alleged to have engaged. (ECF No. 1-1 at 10–11). The boilerplate language that Uhlmeyer uses, however, all sounds in his cause of action for breach of contract stemming from USAA-CIC's failure to provide him benefits that he was allegedly owed. Uhlmeyer is not foreclosed from recovering for this cause of action if he is successful on his breach of contract claim. As such, Uhlmeyer seeks, at a minimum, $65,000 in damages from defendants.

What brings Uhlmeyer's complaint to the $75,000 threshold is his request for punitive damages and attorneys fees. (ECF No. 1-1 at 12). Uhlmeyer is correct in stating that before the court can consider punitive damages, the defendant must present evidence that those damages will more likely than not exceed the amount needed to meet the requirements of diversity jurisdiction. *Burk v. Medical Savings Ins. Co.*, 348 F.Supp.2d 1063, 1069 (D. Ariz. 2004). USAA-CIC has done so here. It has provided the Court with numerous Nevada state court cases in which juries or judges have awarded UM/UIM plaintiffs punitive damages in six and seven figures. (ECF No. 15 at 9–11). *See, e.g., Guaranty Nat Ins. Co. v. Potter*, 912 P.2d 267, 271–72 (Nev. 1996) (judge awarded plaintiffs $1,000,000 in punitive damages in bench trial after defendant insurance company improperly denied UM/UIM benefits); *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 952–53 (Nev. 1998) (jury awarded insured $7,500,000 in punitive damages on $8,757 in contractual damages); *Powers v. United Services Auto. Ass'n*, 962 P.2d 596, 619 (Nev. 1998) (jury awarded insured $5,000,000 in punitive damages on a $47,000 breach of contract claim). Counsel for USAA-CIC has represented that they have reviewed every reported Nevada case where an insurer was found liable for bad faith or a violation of the Nevada Unfair Claims Practice Act, and in no case was the compensatory damage award less than $75,000. (ECF No. 15 at 11). The Court accepts the representation made by defense counsel and agrees that if USAA-CIC is found liable on Uhlmeyer's second or third causes of action, it is more probable than not that the jury will award him punitive damages in an amount that raises his total recovery beyond the $75,000 threshold.

In addition to punitive damages, Uhlmeyer also seeks attorney's fees incurred in connection with his lawsuit. (ECF No. 1-1 at 12). The Ninth Circuit has held that where an underlying statute authorizes an award of attorneys' fees, the fees may be included in the amount in controversy. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), *overruled on other grounds by Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 976–77 (9th Cir. 2013). There is a current circuit split as to whether courts should consider projected or future attorneys' fees when deciding the amount in controversy. *Reames v. AB Car Rental Servs., Inc.*, 899 F. Supp. 2d 1012, 1018 (D. Or. 2012). The Ninth Circuit has yet to weigh in on the controversy. *Id*. For courts that do consider attorneys' fees, the calculation typically includes evidence such as a percentage of the economic damages alleged, fees awarded in similar cases, and estimates of the number of hours likely required to litigate the case multiplied by the attorneys' hourly rates. *Peck v. First Student, Inc.,* 2017 WL 3288116, at *3 (D. Or. Aug. 2, 2017) (collecting cases).

USAA-CIC has not provided such evidence here. It estimates that Uhlmeyer may incur attorney's fees in an amount of $27,500, but it admits that given the early stage of litigation, such a figure is merely speculative. (ECF No. 15 at 12). Even so, N.R.S. §18.010 allows for the court to award attorney's fees where the "defense of the opposing party was brought or maintained without reasonable ground." The Nevada Supreme Court has upheld an award of attorney's fees under this statute after a trial court found that an insurance company refused coverage in bad faith. *See, e.g., Farmers Home Mut. Ins. Co. v. Fiscus*, 725 P.2d 234, 237 (Nev. 1986). Although the sum of attorney's fees is, as USAA-CIC asserts, unknown at this point, given that an operative statute authorizes the awarding of attorney's fees, the Court will take them into consideration.

Based on the $50,000 Uhlmeyer specifically requested and his demands for punitive damages and attorney's fees, the Court finds that USAA-CIC has met its burden of demonstrating that the amount in controversy in this action exceeds $75,000.

///

///

///

///

10

## IV. Conclusion

IT IS THEREFORE ORDERED that the Court will withhold ruling on Uhlmeyer's motion to remand (ECF No. 13) and USAA's motion to dismiss (ECF No. 6) subject to Uhlmeyer filing an amended complaint within **twenty-one days** of this order.

IT IS FURTHER ORDERED that the parties may file supplements to their respected motions once Uhlmeyer files an amended complaint within **twenty-one days** of the filing. The parties shall then have up to **ten days** for any responses to the opposition's supplement. There shall be no replies.

IT IS SO ORDERED.

DATED this 13th day of February, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE